No. 73,564

STATE OF KANSAS, *Appellee*, v. OMAR A. VALENTINE, *Appellant*.

(921 P.2d 770)

Opinion filed July 12, 1996.

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with her on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by Omar A. Valentine from his conviction for aggravated battery and the court's imposition of an upward durational departure sentence.

The record leaves many unanswered questions. When the record is reviewed as we are required to view it, it reveals the following. In the early evening, the victim, Damon Ross, and a friend, Henry Shaffer, left Ross' home and were walking down the driveway toward Ross' mother's car. Suddenly, the defendant, Omar A. Valentine, came around the house with a gun and started yelling at Ross and Shaffer to get on the ground.

Valentine was not wearing a mask and made no attempt to conceal his identity. Valentine had previously lived across the street from Ross. Valentine had frequently visited the Ross home and had joined the Ross family at meals in the Ross home. Ross recognized Valentine.

Upon hearing Valentine come around the house, Shaffer ducked and ran away. Valentine fired two shots at Shaffer's head but missed Shaffer both times.

Then Valentine put the gun to Ross' head and forced Ross to walk to the car. Valentine instructed Ross to get his keys out. Since Valentine had made no effort to conceal his identity and had attempted to shoot Shaffer in the head, Ross thought Valentine would kill him if he got in the car, so Ross attempted to escape.

When Ross tried to escape, Valentine shot him. The bullet struck Ross in the arm, knocking him to the ground. Ross attempted to get up, but Valentine fired three or four more shots at Ross, one of which severed Ross' spine and paralyzed him from the waist down. From the record, we cannot tell if any of the other bullets struck Ross, but there is some indication that Ross may have been struck by two other bullets while on the ground.

One week later, Shaffer (who in this case led a "charmed" life) parked at a curb. He remained seated in the car while he waited

for a car to pass so he could exit from the driver's door. The car that was passing stopped beside Shaffer's car and Shaffer observed Valentine in the passenger seat with a gun. Valentine opened fire. Some 20 to 30 shots were fired by Valentine and the driver of the passing car before Shaffer exited the car. Every window in Shaffer's vehicle was destroyed, and the car itself had many bullet holes in it. Shaffer was not hit, although the jacket he was wearing had bullet holes in it when the shooting stopped.

The jury found Valentine guilty of aggravated battery for the shooting of Ross, but the jury acquitted Valentine of aggravated assault based on the drive-by shooting at Shaffer. Before the defendant was sentenced for the aggravated battery conviction, the State filed a motion for the imposition of a durational departure sentence. Both parties agreed that the defendant had a criminal history of H, creating a presumptive guidelines sentence of 42 to 48 months in prison. At the sentencing, the court departed from the guidelines sentence, sentencing the defendant to 72 months in prison. The defendant appealed, and his appeal was transferred to this court.

The defendant was convicted of level 4 aggravated battery (K.S.A. 21-3414[a][1][A]). On appeal, Valentine contends the trial court erred in failing to instruct the jury on level 7 aggravated battery. K.S.A. 21-3414(a)(1)(B).

Level 4 aggravated battery requires "[i]ntentionally causing *great* bodily harm" (emphasis supplied), K.S.A. 21-3414(a)(1)(A), whereas level 7 aggravated battery requires "intentionally causing bodily harm," K.S.A. 3414(a)(1)(B). The defendant's argument is that the question of whether "great bodily harm" or mere "bodily harm" occurred is a question of fact and should have been submitted to the jury.

The defendant did not request an instruction on a lesser included offense of level 4 aggravated battery, and the trial court did not instruct on a lesser included offense.

"Absent an instruction request, an appellate court may reverse on the failure to give a jury instruction only if the trial court's failure to instruct was clearly erroneous. The failure to instruct is clearly erroneous only if the reviewing court

reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict." *State v. Shortey*, 256 Kan. 166, 172, 884 P.2d 426 (1994).

Here, the failure to give a level 7 aggravated battery instruction was neither erroneous nor clearly erroneous.

A defendant has a right to an instruction and the trial court has a duty to instruct on a lesser included offense which is supported by substantial evidence. *State v. Cummings*, 242 Kan. 84, 91, 744 P.2d 858 (1987). "Where there is no substantial evidence applicable to the lesser degrees of the offense charged, and all the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degree of the offenses are not necessary." *Gibbons*, 256 Kan. at 955.

In making his argument that a lesser included offense instruction for severity level 7 aggravated battery should have been given, the defendant relies on *State v. Ochoa*, 20 Kan. App. 2d 1014, 895 P.2d 198 (1995). This case found that severity level 7 aggravated battery is a lesser included offense of severity level 4 aggravated battery. 20 Kan. App. 2d at 1020.

In so holding, the Court of Appeals stated:

"[A] level 4 aggravated battery is proven by showing that defendant *intentionally* caused *great bodily harm* to the victim. It is difficult to envision how the State could prove a level 4 aggravated battery without necessarily proving a level 7 aggravated battery. A level 7 aggravated battery under 21-3414(a)(1)(B) is shown by proof that a defendant *intentionally caused bodily harm* to a victim with a deadly weapon or in any manner whereby great bodily harm, disfigurement, or death can be inflicted.

"It appears inescapable to us that in proving great bodily harm in a level 4 charge, the State must necessarily prove bodily harm. The only difference between a level 4 aggravated battery and a level 7 aggravated battery is whether defendant intended to inflict *great* bodily harm or disfigurement or merely intended to inflict *bodily harm*, but in a manner 'whereby great bodily harm, disfigurement or death can be inflicted.' In proving both charges, the State must prove that defendant intentionally inflicted bodily harm. In addition, in this case, the State's evidence was that defendant intentionally inflicted bodily harm with a deadly weapon.

"*In this case, the question of whether the bodily harm inflicted was great was a question for the jury. We reject the concept that the trial court may decide, in every case, as a matter of law whether the bodily harm inflicted was or was not great.* In the instant matter, the victim certainly suffered bodily harm. He suffered

a gunshot wound to the abdomen. Whether this was merely bodily harm or great bodily harm was a matter to be decided by the jury. The State, in attempting to prove that defendant intentionally inflicted great bodily harm, necessarily was required to prove that defendant intentionally inflicted bodily harm. We hold that proof of a level 4 aggravated battery necessarily proves a level 7 aggravated battery as defined by 21-3414(a)(1)(B). A level 7 aggravated battery is an included crime of a level 4 aggravated battery, and the trial court erred in failing to instruct the jury on the level 7 aggravated battery. The evidence in this case would support a conclusion that defendant intentionally inflicted great bodily harm on the victim with a deadly weapon or that defendant intentionally inflicted bodily harm on the victim with a deadly weapon. *Whether the harm was great or not was a question of fact to be decided by the jury.*" (Emphasis added.) 20 Kan. App. 2d 1019-20.

We disagree with the Court of Appeals. In *Ochoa*, the victim received a "through and through" bullet wound. The bullet entered the victim's stomach and exited through his back without hitting any vital organs. A "through and through" bullet wound in the abdomen does not present a question of fact as to whether it is mere bodily harm or great bodily harm. This constitutes great bodily harm. See *State v. Whitaker*, 260 Kan. 85, 917 P.2d 859 (1996). There may be instances where a bullet wound is not "great" bodily harm when, for example, it grazes the skin, but we cannot envision a "through and through" bullet wound, as occurred in *Ochoa*, that does not amount to great bodily harm. That part of *Ochoa*, inconsistent with this opinion, is disapproved. As such, we have no difficulty in finding that a bullet wound which severs the spinal cord and causes paralysis, a much worse wound than a through and through bullet wound, qualifies as great bodily injury as a matter of law. The trial court did not err when it did not give an instruction on level 7 aggravated battery. The defendant was either guilty of level 4 aggravated battery or not guilty.

The defendant next contends it was error for the trial court to impose an upward durational departure sentence. Prior to sentencing, the State filed a motion for an upward durational departure sentence, relying on a statutory factor set forth in K.S.A. 1993 Supp. 21-4716(b)(2)(B). The aggravating factor read:

"1. The defendant's conduct during the commission of the current offense manifested excessive brutality to the victim in a manner not normally present in that offense."

At the sentencing, the court departed from the guidelines sentence. The court departed upward and sentenced the defendant to 72 months in prison. In so departing, a discussion occurred at the sentencing hearing, and pertinent parts are set forth herein:

"THE COURT: Mr. Kaufman, argument on your motion, why do you feel that a departure upwards is appropriate in this case?

"MR. KAUFMAN: Because the typical aggravated battery doesn't leave a person paraplegic for life. And when I look at the statutory factors, I think it's [21-]4716, one that I . . . specifically cited to the Court is that the Defendant's conduct in this crime manifested excessive brutality for a victim in a manner not normally present in that offense, and several gunshot wounds to the back, leaving a victim paralyzed for life is simply not a typical aggravated battery and so it's my opinion that that's a relevant statutory factor that justifies a departure upward.

"THE COURT: Is any of your allegations that this offense was committed in furtherance of some sense of organized criminal gang activity?

"MR. KAUFMAN: I thought about that but it would just be my words in Court and I wasn't going to bring anybody in, and it would actually just be speculation and I didn't think that was good enough, so I just ignored that factor.

"THE COURT: Okay. And when you're talking about the excessive brutality, you are talking about the first two shots and then the defendant going over while the victim is laying down and shooting him—

"MR. KAUFMAN: That, Your Honor, and just the totality, because there was an aggravated kidnapping here as well. The fact that it wasn't charged doesn't dissuade me from letting the Court know that it was clearly the taking of, confining of Mr. Ross down the driveway at gunpoint. That in itself is somewhat brutal, the gun at the back of your head, I think that is logically cruel and then the—as the Court's just recited, the pumping of two bullets into the back as Mr. Ross then is sprawled on the ground. And I believe Mr. Ross' testimony was that additional shots were fired, whether they hit him or not, there was no evidence before the Court. But this is just a brutal crime.

. . . .

"THE COURT: . . . I think the evidence is clear that he was involved in that [the drive-by shooting]. I disagree with the jury [referring to the jury's acquittal of the defendant in the aggravated assault charge] and the jury's verdict of not guilty stands up, but it's [the drive-by shooting/aggravated assault] still a factor that I'm going to consider.

. . . .

[The court then asked the State whether the fact that the crime might be associated with organized gang activity was a reason to impose a departure sentence.]

"MR. KAUFMAN: I mean, Mr. Valentine's moniker is Psycho and he has a Neighborhood Crips tattoo, I think it's a car gig he has, I mean, I know that, beat officers and detectives have known this for a long time. I mean the fact that that

didn't come in before the jury or that there is no testimonial evidence before the Court, that doesn't mean that it's not true. I know that on his side he's a banger; I don't know what was going on on the other side. I mean, Mr. Ross and Mr. Shaffer simply were doing nothing other than walking out of Mr. Ross' house who lives with his mother, so I know what his perspective is of heart; I don't know why he did what he did, no doubt that he did it though.

"THE COURT: Okay. Mr. Jones, help the Court out, would you. I'm going to rely on your expertise and knowledge in this area.

"MR. JONES: Well, Your Honor, aggravated battery is divided into several severity levels; the most severe is where great bodily harm occurs and that's a Severity Level IV penalty. I would argue to the Court that, yes, Mr. Ross is a paraplegic, but the statute doesn't specifically say, doesn't—make distinctions between bodily harm and great bodily harm and I would argue to the Court that because of that, Mr. Ross' condition can't be used as a factor to depart in the—in the sentence and I would point out to K.S.A. 21-4716(b)(13), if the factual aspect of the crime is statutorial of the crime, or is used to subclassify the crime on the crime severity level, and I would argue that it is, because we are talking about great bodily harm which is how the statute reads, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime or conviction is significantly different from the usual criminal conduct captured by that aspect of the crime, and I would argue that it's not.

"Aggravated battery is—I mean, that he was charged with and found guilty in Count One, specifically says great bodily harm. That's what happened. And so I would say that on that basis, that you can't find a substantial and compelling—you can't even depart because of that. I would also, based on the other argument that you brought up, you know, we don't have any evidence of gang activity hurting this—in this case. I can't—you—Mr. Ross has a tattoo and all that, but there is no evidence, it's only a conjecture that this was part of some organized gang activity. So, if you're going to use that as a consideration to upwardly depart on the sentence, I would object there because it's only a guess or speculation about what role gang activity had in this case.

"The Court's brought up several other issues that weren't included in Mr. Kaufman's motion to depart. He only stated that the conduct was excessively brutal and I didn't have any notice of any of the other factors that were going to be brought up today to give me time to prepare and answer those—those issues, and so I would object to any of those being used to depart, and this Court has the—has the option if it wants to notify the parties that it wants to depart and could have done that and stated what reasons that the Court felt were going to be considered in an upward departure, and so I'd kind of—if the Court chooses to depart, I would like some notice, I mean, based on its own feeling rather than the State's motion, I'd like some notice and to have the reasons that the Court feels stated, so I can better prepare to make some argument. I'm feeling kind of ambushed here.

. . . .

"THE COURT: . . . I'm going to sustain the Court's (*sic*) motion to depart upward based on the brutality of the defendant's acts, based on the evidence brought out at trial. In particular, placing the gun to the victim's head, taking him over to the car, have all the appearances of an assassination, and but for the victim's attempts to escape, which resulted of course in his paralyze—being paralyzed and shot, he may not have even survived the ordeal. That is something that none of us will ever know.

"But I know the rest of the story and that's enough for me to know that Mr. Valentine is a very dangerous individual, and the fact the Legislature has allowed him to get out in 48 months is their decision. Their range initially is 42 months to be lenient, 48 months if I really want to pound him. *So, I'm going to again sustain the motion based on the defendant's conduct during the current offense manifested excessive brutality to a victim not normally present in that offense. I am not going to make a particular finding or additional aggravating factors because of Mr. Jones' argument that he didn't receive notice, so I'm not going to address any other factors. However, the record needs to be very clear that I am considering the totality of the factual events as this Court finds them to be, which would include Mr. Valentine's being involved in a subsequent shooting of Mr. Shaffer.*"

The defendant appeals the departure sentence, contending that the notice of the aggravating factors was improper and that the court's reliance on the aggravating factors themselves was improper.

The applicable standard of review was discussed in *State v. Richardson*, 20 Kan. App. 2d 932, Syl. ¶ 1, 901 P.2d 1 (1995), which states:

"In an appeal from a departure sentence, an appellate court must determine pursuant to K.S.A. 1993 Supp. 21-4721(d) whether the sentencing court's findings of fact and reasons justifying departure (1) are supported by substantial competent evidence and (2) constitute substantial and compelling reasons for departure as a matter of law. The applicable standard of review is keyed to the language of the statute: K.S.A. 1993 Supp. 21-4721(d)(1) requires an evidentiary test—are the facts stated by the sentencing court in justification of departure supported by the record? K.S.A. 1993 Supp. 21-4721(d)(2) requires a law test—are the reasons stated on the record for departure adequate to justify a sentence outside the presumptive sentence?"

In addition to the brutality factor argued by the State, the defendant contends that the court relied on other aggravating factors, not argued in the State's motion, when it imposed the departure

sentence. These additional aggravating factors included the severity of the harm which occurred, the lack of provocation, the fact that the crime was gang related, and the circumstances surrounding the alleged drive-by shooting of Shaffer. The defendant asserts that the court was in error to rely on these aggravating factors when it imposed the departure sentence because the defendant was not on notice that these factors would be considered grounds for departure. On the other hand, the State asserts that the court did not independently rely on these circumstances as aggravating factors. Instead, the court looked to these circumstances to determine whether the aggravating factor of excessive brutality existed.

The aggravating factor which the State cited in its motion to depart and which the defendant had notice of stated: "The defendant's conduct *during the commission of the current offense [i.e.,* 94 CR 169] manifested excessive brutality to the victim in a manner not normally present in that offense."

This factor only considers the excessive brutality of the aggravated battery offense. Thus, the court should not have considered the alleged drive-by shooting which occurred a week later to determine whether there was excessive brutality in the aggravated battery offense. It is clear that the court considered the alleged drive-by shooting incident in granting the departure sentence as the court stated, "I am considering . . . Mr. Valentine's being involved in a subsequent shooting of Mr. Shaffer." It is also clear that the court considered this as an additional aggravating factor justifying departure. The court should not have considered this separate event of the drive-by shooting in deciding whether excessive brutality existed for the aggravated battery offense. However, the other three factors which the defendant contends were improperly relied upon as aggravating factors could have been used simply to determine whether the aggravating factor of excessive brutality existed.

Of the four additional considerations the court took into account when imposing a departure sentence beyond the excessive brutality factor (severity of harm caused, lack of provocation, gang affiliation, drive-by shooting), it is clear that at least one of these considerations—the drive-by shooting factor—was an independent aggra-

vating factor and not simply looked at to determine if the excessive brutality factor existed. It is also clear that the defendant was not given notice, prior to the sentencing hearing, that this aggravating factor of the drive-by shooting would be argued or used to impose a departure sentence. In addition, the defendant was acquitted of the drive-by shooting. The question now is whether lack of notice of this drive-by shooting aggravating factor and the use of this fact, even though the defendant was acquitted of the drive-by shooting, constitutes reversible error.

The defendant cites to K.S.A. 1993 Supp. 21-4718, contending that this statute requires that notice be provided to the defendant before any aggravating factor is used to impose a departure sentence. K.S.A. 1993 Supp. 21-4718 provides:

"(a)(1) Whenever a person is convicted of a felony, the court upon motion of either the defendant or the state, shall hold a hearing to consider imposition of a departure sentence. The hearing shall be scheduled so that the parties have adequate time to prepare and present arguments regarding the issues of departure sentencing. . . .

. . . .

"(b) If the court decides to depart on its own volition, without a motion from the state or the defendant, the court must notify all parties of its intent and allow reasonable time for either party to respond if they request."

The State points out that the applicable 1993 version of the statute does not specifically require the court or the State to give notice of the grounds of departure. However, the defendant points to K.S.A. 21-4718, which was amended in 1994 to read:

"(a)(1) Whenever a person is convicted of a felony, the court upon motion of either the defendant or the state, shall hold a hearing to consider imposition of a departure sentence. *The motion shall state the type of departure sought and the reasons and factors relied upon.* The hearing shall be scheduled so that the parties have adequate time to prepare and present arguments regarding the issues of departure sentencing. . . .

"(b) If the court decides to depart on its own volition, without a motion from the state or the defendant, the court must notify all parties of its intent and allow reasonable time for either party to respond if they request. *The notice shall state the type of departure intended by the court and the reasons and factors relied upon.*" (Emphasis added.)

The defendant acknowledges that this 1994 amendment is not directly applicable to his case. However, the defendant points to *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995). In *Gideon*, the 1993 guidelines were effective, as they are in this case, but the court still required a district court to provide advance notice to a defendant of all aggravating factors which might be used to enhance the sentence if they are not cited in the State's motion to depart.

In *Gideon*, the State filed a motion for imposition of a departure sentence. The court imposed an upward durational departure. In so departing, the court relied on the aggravating factor of the defendant's "future dangerousness," a factor not cited in the State's motion. The defendant argued that the court was required to give prior notice of the court's intent to depart based on this factor. Noting the 1994 amendment to 21-4718(b), which requires notice of aggravating factors that a district court intends to rely on in departing, this court agreed. The court stated that "it is error to use a factor for upward departure of a sentence that the defendant has not received notice of until presented at the sentencing hearing." 257 Kan. at 620.

However, the *Gideon* court found the fact that the defendant did not have notice of the future dangerousness factor prior to the sentencing hearing was not reversible error. The error was not reversible because the defendant did not proffer any argument on appeal that he would have argued at the sentencing hearing to refute the aggravating factor if he had been provided prior notice of the aggravating factor.

Here, the other aggravating factor of excessive brutality which the defendant had notice of and the court relied on in imposing the departure sentence independently justifies the departure, without considering the drive-by shooting factor. Thus, the error is harmless. The court's review of the departure sentence, based on the single excessive brutality factor, is limited to whether the "court's findings of facts and reasons justifying a departure: (1) Are supported by the evidence in the record; and (2) constitute substantial and compelling reasons for departure." K.S.A. 1993 Supp. 21-4721(d).

In finding that the aggravating factor of excessive brutality existed and justified departure, the court pointed to the following evidence in the record: the manner of shooting in which the defendant placed the gun to the victim's head, forcing the victim over to the car as if it were an assassination, the continued shooting of the victim once he was injured, the subsequent shooting resulting in paralysis, and the lack of provocation by the victim.

The defendant contends that the evidence in the record regarding the manner of the shooting does not support a finding of excessive brutality. The defendant admits that the record indicates that he surprised the victim; that without provocation, he put a gun to the victim's head; and that he forced the victim over to his car as if to attempt an assassination. In addition, the record indicates that the victim feared he was going to be killed because he knew the defendant, who was not wearing a mask; thus, the victim tried to escape. In so doing, he was shot by the defendant and knocked to the ground. While the victim was injured on the ground and still trying to escape, the defendant fired several more shots at the victim. The victim realized he was paralyzed and thought he was going to die. The victim was unarmed, and nothing in the record gives any explanation for shooting the victim. Apparently no motive existed to shoot the victim, other than the fact that the defendant intended to kill the victim.

Despite this evidence in the record, the defendant contends that this shooing was not an excessively brutal form of aggravated battery. In fact, the defendant contends a shooting may never qualify as an excessively brutal form of aggravated battery. In making this contention, the defendant tries to analogize a finding of excessive brutality in committing an aggravated battery to a finding of committing murder in a particularly heinous, atrocious, or cruel manner under the hard 40 statute. The defendant points out that under the hard 40 statute, deaths caused by shootings are not typically considered deaths which occur in a particularly heinous, atrocious, or cruel manner. Citing *State v. Willis*, 254 Kan. 119, 130, 864 P.2d 1198 (1993), as authority, the defendant argues that a crime is committed in an especially heinous, atrocious, or cruel manner when the victim suffers "serious mental anguish," such as uncer-

tainty about his or her fate, or the victim suffers "serious physical abuse" before death. Using this language as a definition of excessive brutality, the defendant contends that there is no evidence in the record to support a finding that the victim suffered serious mental anguish or serious physical abuse above and beyond a typical aggravated battery committed by a shooting.

The State contends that the defendant's analogy between an excessively brutal aggravated battery and a heinous, atrocious, or cruel murder is not appropriate. According to the State, if the legislature wished to incorporate the case law defining the terms "heinous, atrocious, or cruel" into the "excessive brutality" aggravating factor, then the legislature simply would have used the terms "heinous, atrocious, or cruel" instead of the term "excessive brutality" in listing the aggravating factor.

We agree. There is no reason to believe these terms are related or have similar definitions. Nor do we mean to imply that all shooting deaths are not especially heinous, atrocious, or cruel. A heinous, atrocious, or cruel murder allowed a defendant to be imprisoned for 40 years without parole, the harshest sentence in Kansas at the time it was enacted, while a finding of "excessive brutality" simply allows a court to depart from the defendant's presumptive guidelines sentence by up to two times the maximum presumptive imprisonment term. See K.S.A. 1993 Supp. 21-4716(b)(2)(B); K.S.A. 1993 Supp. 21-4719(b)(2).

The defendant's conduct during the commission of the offense manifested excessive brutality to the victim in a manner not normally present in the offense of aggravated battery. This crime went beyond a typical aggravated battery.

The defendant also contends that the aggravating factor of excessive brutality is not supported by the evidence because the court improperly relied on the extent of the victim's injury and the crime's apparent connection to organized crime in deciding that this factor existed. These arguments are irrelevant because this aggravating factor of excessive brutality is independently supported by evidence in the record regarding the manner in which the shooting occurred without looking to the extent of the injury or the crime's connection to organized crime. We do not mean to imply, however,

that the trial court erred in relying on these factors when it imposed the departure sentence. The district court's finding of facts and reason justifying departure—that the manner in which the crime was committed was excessively brutal—is supported by the evidence. See K.S.A. 1993 Supp. 21-4721(d)(1).

The next question is whether the aggravating factor of excessive brutality constitutes a substantial and compelling reason for departure. See K.S.A. 1993 Supp. 21-4721(d)(2). In K.S.A. 1993 Supp. 21-4716(b)(2)(B), the legislature specifically listed as an aggravating factor the fact that the defendant's conduct during the commission of the current offense manifested excessive brutality to the victim in a manner not normally present in that offense. The legislature made it clear that excessive brutality is an aggravating factor which may be considered in determining whether substantial and compelling reasons exist for departure. Thus, this one aggravating factor of excessive brutality constitutes a substantial and compelling reason for departure. See *State v. Duke*, 256 Kan. 703, 721, 887 P.2d 110 (1994) (finding that just one aggravating factor is enough to conclude that a murder was committed in an especially heinous, atrocious, or cruel manner and impose the hard 40 sentence.) The trial court's findings of facts and reasons justifying departure are supported by evidence in the record and constitute a substantial and compelling reason for departure. The trial court's decision to impose an upward durational departure sentence is affirmed.

Affirmed.