NOT DESIGNATED FOR PUBLICATION

No. 111,945

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEVERTIS HORNE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed November 6, 2015. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Barry K. Disney*, senior deputy county attorney, *Barry Wilkerson*, county attorney, and *Derek L. Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam*: Levertis Horne appeals his convictions for aggravated burglary, aggravated battery, and two counts of attempted aggravated robbery. He was acquitted of two additional counts of aggravated robbery. In this direct appeal, Horne raises two claims involving the jury instructions. First, he argues the district court failed to instruct the jury with the applicable definition of "knowingly" committing the aggravated battery. The State concedes the district court's error but argues it was harmless. Second, Horne argues the district court failed to give the lesser included offense instruction of reckless aggravated battery. We affirm.

1

According to Horne's arguments, this case involves a drug deal gone wrong. He does not deny his involvement in the incident. Horne testified he went to an address given to him by his marijuana supplier to purchase a quarter pound of marijuana for $1,200. He testified that once inside the apartment, he was hit by one man and then jumped by two men. Horne was adamant that he did not have a gun. Horne claimed that as he attempted to protect himself during the attack, he heard a gunshot and he then ran away. He claimed one of the men hit him in the face with a hammer. Horne testified he did not seek medical treatment or call the police concerning the incident because, "it was a drug deal." Horne's cell phone and black do-rag (head covering) were found in the apartment. Horne admitted to police that he intended to purchase marijuana at the apartment that day.

Tyler Sweet, Andrew Johnson, Austin Miller, and Chase Cargile all lived together in an apartment in Manhattan. Sweet testified that on October 5, 2013, he and Cargile and Miller were watching a movie when they heard a knock at the door. Johnson was in the kitchen. As Sweet opened the door, Horne, dressed in all black with a bandana over his face rushed in and started yelling for the men to "give him everything." Sara Steinhauser, Johnson's girlfriend, was in Johnson's bedroom when she heard a commotion in the living room and someone yelling to get on the ground or he would shoot. Steinhauser looked out into the hallway, saw Horne holding a pistol. She hid in a closet and called 911.

Sweet testified he said he did not have anything and then Horne hit him with the pistol in the right eye. The blow knocked Sweet out briefly. When Sweet regained consciousness, Horne was holding the gun to his head saying he was not afraid to kill anyone and for everyone to lay down in the middle of the floor. Sweet laid down on the floor with his head covered. When he saw his friends wrestling with Horne and heard a gunshot, he ran out of the apartment and to a friend's house. When he returned to the apartment, the police were there.

Miller testified he had purchased marijuana in Colorado and had it in the apartment to sell. Miller's testimony about Horne's entrance to the apartment and his demand for marijuana was similar to Sweet's. Miller said he was the first person to get a container of marijuana from his bedroom. Cargile also got a container of marijuana and placed it on the dining room table. When Horne's attention was distracted, Cargile lunged at him with a pocketknife. Cargile testified that as they scuffled, Horne shot him twice, once in the adam's apple and once in the collar bone.

As Cargile and Horne scuffled, Miller decided to run at Horne as well and tackle him. He testified he heard a gunshot and then heard Cargile yelling that he had been shot. Miller tackled Horne and a second shot was fired. Miller said Horne struck him in the head with the gun. Horne fired a shot at Miller but missed. Miller rushed Horne again. Horne struck Miller with the gun causing Miller to lose his vision for a couple of seconds. Horne ran out of the apartment. Miller grabbed a hammer and threw it at Horne striking him in the face.

The State charged Horne with the aggravated battery of Cargile, the attempted aggravated robbery of Sweet, the attempted aggravated robbery of Johnson, the aggravated robbery of Miller, the aggravated robbery of Cargile, and aggravated burglary. The jury convicted Horne on 4 of the 6 counts. The jury acquitted Horne of the aggravated robbery charges involving Miller and Cargile. The trial court sentenced Horne to a combined sentence of 73 months' imprisonment. Horne appeals.

Horne first argues the trial court erred in failing to give the jury the appropriate definition concerning that he "knowingly" committed aggravated battery.

For a knowing aggravated battery, the State must prove that the defendant "acted while knowing that some type of great bodily harm or disfigurement of another person was reasonably certain to result from the defendant's action." *State v. Hobbs*, 301 Kan.

3

203, 213, 340 P.3d 1179 (2015). In this case, Horne claims the trial court failed to instruct the jury with the appropriate definition: that Horne acted knowing great bodily harm was reasonably certain to result.

Although Horne did not object to the instruction, we may review for clear error. *State v. Williams*, 295 Kan. 506, Syl. ¶ 3, 510-11, 286 P.3d 195 (2012). We first determine whether the instruction was appropriate, a legal question subject to unlimited review. If the trial court erred, then we next consider a reversibility inquiry. 295 Kan. 506, Syl. ¶¶ 4-5.

The trial court's instruction on the definition of a knowing aggravated battery was erroneous because it was not legally correct. See *Williams*, 295 Kan. 506, Syl. ¶ 4 (The designation of "error" encompasses an instruction that is not legally appropriate.); *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012) (An instruction that does not accurately state the applicable law would be legally infirm.). The State concedes this point to Horne based on *Hobbs*, 301 Kan. at 210-11, where the court held:

> "Harmonizing K.S.A. 2011 Supp. 21-5413(b)(1)(A) and K.S.A. 2011 Supp. 21-5202(f), (g), and (i) to the greatest extent possible—see *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012) (court considers provisions of an act in pari materia with view to reconciling, bringing provisions into workable harmony); *State v. Frierson*, 298 Kan. 1005, 1012, 319 P.3d 515 (2014) (court assumes legislature does not intend to enact useless, meaningless legislation)—leads us to conclude that the legislature does not intend for 'general intent' to necessarily mean what it once did and that 'knowingly,' as used in K.S.A. 2011 Supp. 21–5413(b)(1)(A), means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action."

In the present case, concerning the aggravated battery charges involving Cargile, the trial court instructed the jury that the defendant, "acts knowingly when the defendant is aware of the circumstances in which he was acting." Horne did not object to this definition. However, as stated in *Hobbs*, it was error for the court to not instruct that Horne must have been aware that his conduct was reasonably certain to cause the result. 301 Kan. at 211. While that ends the discussion on the question of whether the instruction was legally correct, we are not convinced the error changed the outcome of the trial.

Once we find error, we then consider a "reversibility inquiry." For an instruction error not objected to, the standard is clearly erroneous. *Williams*, 295 Kan. 516; see also *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013) (court must be firmly convinced there is a real possibility the jury would have returned a different verdict).

Horne argues the evidence supports a finding that a jury properly instructed on the elements of a knowing aggravated battery could have reached a different result; that the shooting was accidental. Specifically, Horne relies on the following evidence presented at trial to justify his argument: (1) Miller testified that Cargile and Horne scuffled, and (2) Miller later tackled Horne, and as he did, two shots were fired off the side of Miller's head in Cargile's direction. From that evidence, Horne argues the jury, if instructed that it was required to find an awareness that the conduct was reasonably certain to cause the result, could have concluded that Horne had not knowingly caused great bodily harm.

Based upon the evidence presented, the jury would not have reached a different verdict if properly instructed on the elements of a knowing aggravated battery. There is no evidence any of the acts in this case were accidental. The State presented evidence that when Horne entered the apartment he clearly told all the occupants to lay down in the middle of the floor and that he was not afraid to shoot and kill anyone. Cargile testified about putting the marijuana on the table instead of giving it Horne:

"Q: [PROSECUTOR] Okay. Do you say anything about that point in time?

"A. [CARGILE] He says to me to bring the money and the marijuana to him, otherwise he will shoot me in the kneecap.

"Q. Okay. And what - - what do you do in response to that?

"A. I tell him to go fuck himself.

"Q. And you worry about saying that word, but I told you you have to say what was said, correct?

"A. Yes, sir.

"Q. Okay. So then what happens?

"A. He tells me to bring him the money and the marijuana, otherwise he's going to start shooting my friends. [Cargile refuses and lays down].

. . . .

"Q. And then what happens?

"A. He tells me to get the money and the marijuana and bring it to him, otherwise he's going to shoot me."

Miller also testified that Horne pointed the gun directly at him and shot it but he missed. All the acts in this case were intentional. Horne knew his actions of firing the gun at Cargile knowingly caused great bodily harm.

There is a difference between a defendant's awareness that his or her conduct is reasonably certain to cause a result and the defendant's awareness of the nature of his or her conduct. However, in this case the State presented evidence of how and when Horne fired the gun and several witnesses who saw Horne fire the gun. A jury properly instructed on the definition of knowingly would not have reached a different result; *i.e.*, reckless conduct.

Next, Horne argues the evidence at trial supported a lesser included offense instruction for reckless aggravated battery, *i.e.*, "recklessly causing great bodily harm to another person or disfigurement of another person." K.S.A. 2011 Supp. 21-5413(b)(2)(A). Horne maintains the trial court erred in not instructing the jury on that

6

lesser included offense. The State asserts the court was not required to give the requested lesser included offense instruction because no evidence had been presented that would reasonably justify a conviction on reckless aggravated battery.

We follow the Supreme Court's recent analysis and corresponding standards of appellate review for issues involving jury instructions:

> "(1) First the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011) *cert. denied* 132 S. Ct. 1594 (2012)]." *Plummer*, 295 Kan. at 163.

With regard to preservation, Horne requested the lesser include offense instruction and the State objected to its inclusion. The State argued the lesser included instruction was wholly inconsistent with Horne's testimony and his defense. The trial court agreed with the State and denied Horne's request. The issue was properly preserved in the trial court.

In light of proper preservation, Horne shifts the discussion to whether an instruction for a reckless aggravated battery was legally appropriate. When an appellate court considers the legal appropriateness of an instruction, "appellate review is unlimited, as with all questions of law." *Plummer*; 295 Kan. at 161. In the context of lesser included offense instructions, an appellate court asks whether the lesser crime is "legally an included offense of the charged crime." 295 Kan. at 161. Neither party challenges the legality of the lesser instruction. See K.S.A. 2014 Supp. 21-5109(b)(1) (lesser included

7

crime defined); K.S.A. 2011 Supp. 21-5413(b)(1)(A) (severity level 4 aggravated battery); K.S.A. 2011 Supp. 21-5413(b)(2)(A) (severity level 5); or K.S.A. 2011 Supp. 21-5413(b)(2)(B) (severity level 8). Because a severity level 5 or 8 aggravated battery is a lesser degree of a severity level 4 aggravated battery, the former crime is a lesser included offense under Horne's level 4 aggravated battery charge. Hence, Horne's request for a reckless aggravated battery instruction was legally appropriate.

Despite its legal appropriateness, we find there is insufficient evidence to support the instruction. Even if the instruction is legally appropriate when viewed in isolation, it must be supported by the particular facts of the case at bar. *Plummer*, 295 Kan. at 161. Thus, our primary focus concerning Horne's argument is to determine whether a lesser included offense instruction was appropriate based on the facts of this case. Even though the giving of lesser included crime instructions is not a matter of discretion with the trial judge, our Supreme Court recently pointed out that the giving of the instruction depends on the underlying facts of the case. The *Plummer* court described the inquiry as follows:

"[P]ursuant to the language of K.S.A. 22-3414(3), a lesser included offense instruction is only required 'where there is some evidence which would reasonably justify a conviction of some lesser included crime.' Therefore, a district court does not err in refusing to give a lesser included offense instruction on a crime which is unsupported by the evidence in that particular case." 295 Kan. at 161.

Horne argues that the State presented evidence that would reasonably justify a conviction for reckless aggravated battery when viewed in the light most favorable to him. Specifically, Horne relies on the following evidence presented at trial to justify his argument: (1) Miller testified that Cargile and Horne scuffled and (2) Miller later tackled Horne, and as he did two shots were fired off the side of Miller's head in Cargile's direction. Horne argues that from the testimony the jury could have concluded that his conduct was reckless in committing an armed robbery and he had consciously disregarded the substantial and unjustifiable risk that an accidental shooting would result.

8

Horne also objects to the State's argument that he was not entitled to the lesser included instruction because his defense was inconsistent with the lesser instruction and he did not present any evidence to support the lesser instruction. Horne cites *State v. Simmons*, 295 Kan. 171,176, 283 P.3d 212 (2012),where the court stated: "We have held that the evidence which would support a conviction on a lesser included crime is not restricted to that which was proffered by the defense, but rather it can include evidence presented by the State, as well."

In his appellate brief, Horne concedes the State's evidence was not consistent with his theory of defense, but argues we must look at all the evidence to see if the lesser included instruction was necessary. However, Horne's arguments do not point to evidence that would justify a conviction for reckless aggravated battery. K.S.A. 2014 Supp. 21-5413(b)(2)(A) defines reckless aggravated battery as "recklessly causing great bodily harm to another person or disfigurement of another person." Recklessness is also defined by statute. K.S.A. 2014 Supp. 21-5202(j) provides: "A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." By contrast, intentional conduct occurs when it is someone's "conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2014 Supp. 21-5202(h).

Horne cites *State v. Ochoa*, 20 Kan. App. 2d 1014, 895 P.2d 198 (1995), *overruled in part by State v. Valentine*, 260 Kan. 431, 435, 921 P.2d 770 (1996), for authority that the difference in the levels of aggravated battery is the mindset of the defendant. 20 Kan. App. 2d at 1020-21. However, the *Ochoa* court did not find that reckless battery constituted a lesser offense of intentional aggravated battery as a matter of law. Ochoa testified he did not intend to shoot anyone. Instead, he shot his pistol into the air to

9

frighten those advancing toward him. Based on Ochoa's testimony, the court found there was evidence to support a conviction of either intentional or reckless aggravated battery. Therefore, instructions on both were appropriate. Furthermore, the *Ochoa* court found that based on the specific facts of the case, there was a real possibility the verdict would have been different if the lesser instructions had been given. 20 Kan. App. 2d at 1021. Facts even remotely similar to *Ochoa* are not present in this case.

The State cites the case of *State v. Roberts*, No. 91,322, 2004 WL 2977478, (Kan. App. 2004) (unpublished opinion), as a drug-deal-gone-bad situation in light of Horne's testimony that he went to the apartment to purchase marijuana. In *Roberts*, the victim testified Roberts had intentionally shot him, whereas Roberts' version was that during a struggle the gun went off accidentally. The *Roberts* court ruled the trial court did not err in failing to instruct on reckless aggravated battery because the evidence showed that either Roberts intentionally shot the victim or the gun discharged accidentally; there was no evidence Roberts acted recklessly. 2004 WL 2977478, at *1-2. In *Tucker v. State*, No. 89,661, 2004 WL 90056, (Kan. App. 2004) (unpublished opinion), the court also rejected the defendant's contention that the trial court should have provided the jury an instruction on reckless aggravated battery as a lesser included offense because the only evidence at trial was the victim's testimony that the defendant intentionally shot her. 2004 WL 90056, at *5.

The State argues the evidence does not support a conviction for reckless aggravated battery. We agree. Horne did not argue the theory of reckless conduct at trial. The evidence left the jury with the following options—Horne shot Cargile intentionally or the gun discharged accidentally. There was no evidence Horne acted merely recklessly. There is no evidence here that Horne shot a gun into the air or swung a knife in the air or engaged in any conduct with a gun that amounted to only a reckless act. The court in *Roberts* stated:

10

"While it may be said that engaging in a drug deal is reckless, it does not follow that a shooting which occurs during the transaction is by its nature a reckless act. Again, the evidence here supports only the fact that the shooting resulted from an intentional act or an accident." 2004 WL 2977478, *3.

Sweet testified that Horne had rushed through the door with a gun in his hand. Horne yelled that he was not afraid to shoot and kill anyone who did not bring him marijuana. Horne also hit Sweet with the gun. Miller and Cargile both testified that Horne held them at gunpoint and demanded they give him all the marijuana they had in the apartment. Steinhauser saw Horne holding a gun. Miller testified Horne shot the gun at him but missed.

Consequently, the trial court properly refused to give an instruction on the lesser included offense of reckless aggravated battery.

Affirmed.