NOT DESIGNATED FOR PUBLICATION

No. 116,425

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHEW JAEGER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed October 20, 2017. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Jon S. Simpson*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MALONE, J., and LORI A. BOLTON FLEMING, District Judge, assigned.

PER CURIAM: Matthew Jaeger appeals the district court's denial of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel. The district court summarily denied some of Jaeger's claims and denied the remaining claims after an evidentiary hearing. Finding no error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2009, Jaeger was convicted following a jury trial of kidnapping, aggravated battery, and criminal threat. The district court sentenced Jaeger to 106 months' imprisonment. Jaeger's convictions were affirmed on direct appeal. *State v. Jaeger*, No. 104,119, 2011 WL 6382749 (Kan. App. 2011) (unpublished opinion), *rev. denied* 296 Kan. 1133 (2013). The facts underlying the convictions are fully set out in that opinion and only a few facts are summarized herein, for context.

Jaeger and Mary Francine Biggs were both students at the University of Kansas and had dated off and on between August 2005 and October 2007. On October 7, 2007, after trying repeatedly to reach Biggs by phone and by text, Jaeger broke into her apartment. When he found her, he choked her to the point of unconsciousness and inflicted serious injuries on her, including severe trauma to her external genitals.

An eyewitness told the 911 dispatcher that two men dragged Biggs by her arms and hair and forced her into a car. Law enforcement officers stopped the car a short time later, finding Biggs in the backseat with Jaeger. When Biggs exited the car, an officer noticed blood dripping onto the pavement where she was standing. Officers took Jaeger into custody. A videotape of the officer interviewing Jaeger at the police station was introduced at trial.

Biggs required immediate surgery to stop the bleeding and repair a hematoma and lacerations. She was hospitalized for 11 days. While hospitalized, she gave a videotaped statement. This videotaped statement was introduced at trial after Jaeger's motion in limine to exclude it was denied. Biggs also testified at trial and was subject to cross-examination on the videotaped statement and her testimony.

The crime was reported in the *Lawrence Journal-World* newspaper and its online edition on October 19, 2007. At least 10 other articles appeared on the newspaper's website over the next 22 months leading up to trial. Readers of the online version of the articles posted many comments, most of them anonymously, that showed animus toward Jaeger. At least one of the articles and attendant comments remained available online through the first day of jury selection in July 2009.

At trial, Jaeger's theory of defense was that he entered Biggs' apartment because he feared she was being harmed and he intended to defend her. The defense contended that Biggs injured herself by falling onto the railing of the bed. The defense asserted that Biggs got into the car willingly with Jaeger, that he was helping her get to a hospital for medical treatment, and that he had no intent to restrain or kidnap her.

The jury convicted Jaeger of kidnapping (instead of aggravated kidnapping), aggravated battery, and criminal threat. After this court affirmed Jaeger's convictions, he filed a K.S.A. 60-1507 motion on September 9, 2013, alleging ineffective assistance of his trial counsel, Pedro Irigonegaray. The district court appointed counsel for Jaeger and held a preliminary hearing on Jaeger's claims in October 2014. At the preliminary hearing, the district court summarily denied some of Jaeger's claims. Specifically, the district court denied Jaeger's claim that Irigonegaray was ineffective for failing to object to Biggs' videotaped statement at trial on the grounds that it was cumulative evidence. The district court also summarily denied Jaeger's claim that Irigonegaray was ineffective for failing to request lesser instructions on aggravated battery.

The State conceded that three of Jaeger's claims merited an evidentiary hearing, which the district court granted. Specifically, the district court granted an evidentiary hearing on Jaeger's claims that Irigonegaray was ineffective for (1) failing to raise voluntary intoxication as a defense; (2) failing to request a criminal restraint instruction; and (3) failing to request a change of venue.

3

The district court held an evidentiary hearing on March 6, 2015. At the hearing, Jaeger testified that he had told Irigonegaray that on the night of the incident (1) he had been fasting for three days and had only eaten a sub sandwich during that time; (2) he had consumed five Valium and five Zanax pills; and (3) he had consumed alcohol, including several shots of tequila. However, Irigonegaray did not pursue a voluntary intoxication defense. Jaeger also testified that he had told Irigonegaray that he did not believe what had happened with Biggs amounted to kidnapping. Jaeger explained that he had not discussed the criminal restraint issue with Irigonegaray because he "didn't really have legal knowledge . . . at the time." Finally, Jaeger testified that he had discussed the issue of a change of venue at least five or six times with Irigonegaray.

Irigonegaray testified that he had considered the possibility of a voluntary intoxication defense. However, he explained he did not pursue this defense because the evidence presented at trial showed that Jaeger had made a voluntary decision to try to protect Biggs and had taken specific actions to locate her. Because of this evidence, Irigonegaray believed "[i]t would be incongruous to suggest that someone was so intoxicated as to not have the ability to generate an intent when the primary defense was that there was a specific intent to defend."

Regarding the instruction on criminal restraint, Irigonegaray testified that he chose not to request the instruction because of the defense he had chosen to pursue. He explained that the defense was that no kidnapping had occurred at all, so there was no discussion of any lesser offense instructions.

Finally, Irigonegaray testified that he had considered and discussed the possibility of requesting a change of venue due to the significant publicity in the case. He acknowledged that "many ugly statements" had been made in the press. Despite this information, he chose not to investigate or pursue a motion for a change of venue because his perspective "was that Douglas County was about as good a place in Kansas" as he

4

could think to try a criminal case. He explained that if the case was transferred to another county, it would likely end up in a more conservative county that would have a "lack of open-mindedness to perhaps a defense such as the one we were pursuing." Irigonegaray noted that he knew "at the time that a change of venue was an extremely difficult bar to reach and had expressed concerns about whether or not we could be successful in reaching it." Based on all these factors, and after discussing the issue with Jaeger, he and his co-counsel decided that Jaeger could have a fair trial in Douglas County.

On July 24, 2015, the district court filed a memorandum order that contained findings of fact and conclusions of law addressing the issues raised at the evidentiary hearing. The district court found that Irigonegaray made a strategic decision not to pursue a voluntary intoxication defense which was inconsistent with Jaeger's primary theory of defense. The district court also found that Irigonegaray made a proper strategic choice not to request an instruction on criminal restraint. Finally, the district court found that Irigonegaray was not ineffective for failing to request a change of venue and that he properly handled the issue of pretrial publicity with the panel on voir dire. Thus, the district court found that Jaeger was not entitled to any relief and the court denied the remainder of Jaeger's K.S.A. 60-1507 motion. Jaeger timely filed a notice of appeal.

ANALYSIS

On appeal, Jaeger claims the district court erred in denying his K.S.A. 60-1507 motion. Jaeger takes issue with the district court's decision to summarily deny some of his claims, and he also argues that the district court erred in denying the claims addressed in the evidentiary hearing. Specifically, Jaeger asserts on appeal that his trial counsel was ineffective for (1) failing to object to Biggs' videotaped statement at trial; (2) failing to request a lesser instruction on aggravated battery; (3) failing to raise voluntary intoxication as a defense; (4) failing to request an instruction on criminal restraint; and (5) failing to request a change of venue.

5

The district court summarily denied some of Jaeger's claims at the preliminary hearing. When the district court denies a K.S.A. 60-1507 motion based only on the motions, files, and records after a preliminary hearing, the appellate court is in just as good a position as the district court to consider the merits. Thus, the standard of review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 222). An appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013).

*Failure to object to videotaped statement*

Jaeger argues that Irigonegaray failed to object at trial to Biggs' entire videotaped statement on the ground that it was cumulative to her trial testimony. In fact, Irigonegaray filed a motion in limine seeking to exclude the entire videotaped statement on the ground that it was more prejudicial than probative, and Irigonegaray filed a motion for reconsideration after the district court denied the motion. At trial, although Irigonegaray objected to a portion of the videotaped statement as being inadmissible, he failed to object to the entire videotaped statement on the ground that it was cumulative evidence. In the direct appeal, this court found that Jaeger failed to preserve the cumulative evidence objection for appeal. *Jaeger*, 2011 WL 6382749, at *8.

Even if we assume that Irigonegaray's performance was deficient for failing to preserve the cumulative evidence objection, Jaeger is unable to establish any prejudice on this issue. Although this court found on direct appeal that the issue was not properly preserved, this court went on to find that the district court did not abuse its discretion by allowing Biggs to testify in person as well as admitting her videotaped statement into evidence. 2011 WL 6382749, at *8. This court also concluded that Jaeger's right to a fair trial was not substantially prejudiced by the admission of the videotaped statement. 2011 WL 6382749, at *8. Based on this court's findings in the direct appeal, we conclude that the district court did not err in denying Jaeger's claim on this issue at the preliminary hearing. See *Trotter v. State*, 288 Kan. 112, 133-34, 200 P.3d 1236 (2009) (determination of prejudice in direct appeal controls the question of whether trial counsel's performance deprived defendant of a fair trial).

*Failure to request lesser instruction on aggravated battery*

Jaeger argues that the district court erred in dismissing his claim at the preliminary hearing that Irigonegaray was ineffective for failing to request instructions on lesser

included offenses of aggravated battery and instructions defining "great bodily harm" and "serious bodily injury." Jaeger argues that because "[t]he record contains no evidence of trial strategy or any reason why Mr. Irigonegaray failed to request a lesser offense instruction," the claim could not be resolved without an evidentiary hearing.

In rejecting Jaeger's claim on this issue at the preliminary hearing, the district court made the following findings:

> "Under *Brice,* lesser offenses of aggravated battery are warranted if the harm suffered was 'slight, trivial, minor or moderate.' 276 Kan. at 774. Immediately following this incident, Ms. Biggs could feel blood gushing out of her; she could not walk across the street due to pain; she was 'drenched in blood' in the ambulance; at the hospital the OB-GYN observed 'extensive trauma to the genital area, active bleeding and a rapidly expanding hematoma.' Ms. Biggs required immediate surgery to evacuate the hematoma and stop the bleeding. She was subject to a second surgery a day later to remove the packing placed to stop the bleeding. Ms. Biggs remained in the hospital for 11 days, and she required one week of home health care thereafter. She remained on a catheter for two weeks after her dismissal from the hospital. As the Court of Appeals noted, 'it is undisputed that Biggs suffered a significant injury, including substantial loss of blood.' No reasonable jury could consider the injury slight, trivial, or minor.
>
> "Petitioner also raises the failure of counsel to request a definition of great bodily harm. Even if the definition had been given, the Court finds that the result of the trial would not have differed. As stated, the injuries were not slight, trivial, minor or mere bruising."

In *State v. Valentine*, 260 Kan. 431, Syl. ¶ 3, 921 P.2d 770 (1996), our Supreme Court held that where there is no substantial evidence applicable to the lesser degrees of the offense of aggravated battery, and all the evidence taken together shows that the offense, if committed, is clearly of the higher degree, instructions relating to the lesser degree of aggravated battery are unnecessary. Moreover, as the district court noted, in *State v. Brice*, 276 Kan. 758, 774, 80 P.3d 1113 (2003), our Supreme Court stated that a

8

lesser included instruction on aggravated battery is warranted if the harm suffered by the victim was "slight, trivial, minor or moderate."

Here, we agree with the district court that the evidence of great bodily harm suffered by Biggs was so overwhelming that no reasonable jury could have found otherwise. This court stated as much in Jaeger's direct appeal when it found that "it is undisputed that Biggs suffered a significant injury, including substantial loss of blood." *Jaeger*, 2011 WL 6382749, at *7. We further note that at trial, Jaeger contested the cause of Biggs' injury, but he did not challenge the severity of the injury. Based on the record presented, we conclude that the district court did not err in rejecting Jaeger's claim at the preliminary hearing that his counsel was ineffective for failing to request lesser instructions and definitional instructions on aggravated battery.

*Failure to raise voluntary intoxication defense*

Jaeger argues that a voluntary intoxication defense would have negated the intent element for kidnapping and resulted in acquittal and that Irigonegaray was ineffective for failing to make an adequate investigation of this defense. The State responds by arguing that Irigonegaray effectively decided not to pursue a voluntary intoxication defense. In rejecting Jaeger's claim on this issue, the district court concluded as follows:

> "With respect to the issue of [voluntary] intoxication, the hearing clearly established that trial counsel made a strategic decision not to pursue [a voluntary] intoxication defense which was inconsistent with their theory of defense. Trial counsel reviewed the discovery and talked with Jaeger about the amount of drugs and alcohol he consumed the night in question before the trial lawyers formulated a theory of the case. The police officer who arrested Jaeger that night was of the opinion that Jaeger was not intoxicated at the time. The interview was videotaped, and defense counsel could form an opinion whether a jury would believe that Jaeger was so intoxicated that he could not form the requisite intent. Jaeger failed to meet his burden to prove that no reasonable attorney would have proceeded in this manner."

9

The factual underpinnings of this conclusion are supported by substantial competent evidence in the record. First, there was no substantial evidence supporting Jaeger's claim that he was intoxicated on the night in question to the extent that he could not form the intent to kidnap Biggs. The police officer who arrested Jaeger that night was of the opinion that he was not intoxicated at the time. Moreover, Irigonegaray testified that the defense theory was that Jaeger had made efforts to find Biggs and had entered her apartment because he feared she was being harmed and he intended to defend her. Irigonegaray testified, "it would be incongruous" to pursue a voluntary intoxication defense when the primary defense was that there was a specific intent to defend.

Irigonegaray reviewed the discovery and talked with Jaeger about the amount of drugs and alcohol he consumed the night in question before the trial lawyers formulated a theory of the case. Based on the Jaeger's explanation for his actions, Irigonegaray pursued a defense strategy that Jaeger was merely trying to help Biggs by taking her to the hospital—a defense that was partially successful. Because a voluntary intoxication defense would have been inconsistent with Jaeger's primary theory of defense, we agree with the district court that Irigonegaray made a proper strategic decision not to pursue a voluntary intoxication defense. The district court's factual findings were supported by substantial competent evidence and support the district court's legal conclusion that Jaeger failed to establish ineffective assistance of counsel on this claim.

*Failure to request criminal restraint instruction*

Jaeger claims that Irigonegaray provided ineffective assistance of counsel for failing to request a criminal restraint instruction as a lesser offense of aggravated kidnapping. The State argues that Irigonegaray effectively decided not to request an instruction on criminal restraint. In rejecting Jaeger's claim on this issue, the district court concluded as follows:

10

"With respect to the issue of failure to request the trial court to instruct the jury on criminal restraint as a lesser included offense of kidnapping, defense counsel again made a strategic choice. The defense theory was that Ms. Biggs willingly accompanied Jaeger to the car. The defense team called a blood spatter expert who testified that the blood evidence was inconsistent with Ms. Biggs being forced out of her apartment and into Jaeger's car. Had the trial strategy succeeded, it would have resulted in a complete acquittal because Jaeger maintained that he was assisting Ms. Biggs and transporting her to the hospital for help. While the trial strategy may have failed, this Court finds the decision to argue for acquittal clearly falls within the region of tactics and strategy."

The factual underpinnings of this conclusion are supported by substantial competent evidence in the record. Irigonegaray testified at the evidentiary hearing that he did not contemplate seeking an instruction on criminal restraint because the theory of defense was that Biggs went with Jaeger willingly, that Jaeger was helping her get to a hospital for medical treatment, and that he had no intent to restrain or kidnap her. A criminal restraint instruction would have been inconsistent with that theory.

The district court concluded that Irigonegaray's choice not to request a criminal restraint instruction as a lesser included offense of aggravated kidnapping was the result of a reasonable strategy to seek an acquittal on the original charge. This conclusion was supported by substantial competent evidence presented at the evidentiary hearing which was sufficient to support the court's conclusions of law. Thus, the district court did not err in rejecting Jaeger's claim on this issue after the evidentiary hearing.

*Failure to request a change of venue*

Jaeger claims that his counsel was ineffective for failing to file a change of venue motion based on the "significant media coverage" of the case that included inaccurate information. Jaeger attached to his amended K.S.A. 60-1507 motion over 100 pages of screenshots from the website of the *Lawrence Journal-World* newspaper, which included

11

11 articles published by the newspaper—four in October 2007 when the crime occurred, four in 2008, and three in the month before trial. Jaeger argues that "most of the commentary on that publicity demonstrated significant animus toward . . . Jaeger," and the comments came from "people who would be part of the jury pool."

The State argues that the district court properly concluded that Irigonegaray reasonably chose to defend Jaeger in Douglas County. The State also argues that Jaeger proves no prejudice on this issue. In rejecting Jaeger's claim on this issue, the district court concluded as follows:

> "21. Finally, Jaeger contends his trial lawyer was ineffective for failing to pursue a change of venue motion. Jaeger seems to argue that prejudice can be presumed from the tenor of the on-line comments, though he cannot show that these comments infected or even affected the trial. The hearing testimony clearly showed that defense counsel and the defense team carefully considered whether to file a motion in an attempt to change venue, and they continued to discuss this issue as the case was pending. Defense counsel concluded that Douglas County was probably the best county in Kansas to defend a criminal case and was concerned with where the trial might land if the motion succeeded. Simultaneously, defense counsel testified to succeed on a motion to transfer venue under Kansas law is difficult and expensive.
> "22. As an alternative, defense counsel elected to address the issue of pretrial publicity with the panel on voir dire. Defense counsel submitted specialized jury questionnaires and conducted some individualized voir dire. A number of jurors were removed for cause. Jaeger did not challenge the empaneled jury in his motion or show any prejudice. The Court finds that trial counsel made a reasonable strategic decision not to pursue a change in venue."

A defendant requesting a change of venue based on pretrial publicity must satisfy the district court that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he or she could not obtain fair and impartial trial in that county. The defendant bears the burden to show that prejudice exists in the

12

community as a matter of demonstrable reality and to show that the level of prejudice makes it reasonably certain that the defendant cannot obtain a fair trial. *State v. Roder*, 300 Kan. 901, 909-10, 336 P.3d 831 (2014).

Irigonegaray testified that he and his co-counsel had numerous discussions on whether to file a motion for change of venue and that he shared their decision with Jaeger. Irigonegaray was concerned that a new venue could be disadvantageous to Jaeger because of a "lack of open-mindedness" to their defense. He also knew that the standard for winning a change of venue is "an extremely difficult bar to reach."

The district court found that the defense team "carefully considered whether to file a motion in an attempt to change venue," and that conclusion is supported by Irigonegaray's testimony. The district court also found that Irigonegaray took other actions to address the issue of pretrial publicity, which included drafting specialized jury questionnaires and conducting individualized voir dire of nine members of the jury panel. The district court noted that while four jurors were removed for cause based on their knowledge of pretrial publicity, "[n]othing about their prior knowledge or opinions was revealed to other members of the jury." Finally, the district court found that Jaeger failed to show any prejudice as a result of the failure to change venue.

The district court's factual findings were supported by substantial competent evidence and support the district court's legal conclusion that Irigonegaray made a considered strategic decision to not pursue a change of venue. Moreover, Jaeger failed to meet his burden of showing that Irigonegaray's choice prejudiced his right to a fair trial. Thus, we conclude the district court did not err in denying Jaeger's claim that Irigonegaray was ineffective for failing to request a change of venue.

Affirmed.

13